## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Kimberly Ann Brown,     )
                                 )
      Plaintiff,        )
                                 )     Civil Action No. 4:18-870-RMG
     vs.                )
                                 )
Andrew M. Saul[1], Commissioner    )
of Social Security,          )     **ORDER**
                                 )
      Defendant.      )
_____)

Plaintiff has brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 5, 2019, recommending that the Commissioner's decision be affirmed. (Dkt. No. 28). Plaintiff filed objections to the R & R, and the Commissioner filed a response. (Dkt. No. 30, 32). As explained below, the Court reverses the decision of the Commissioner and remands the case to the agency with instructions to award benefits from January 28, 2014.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

---

[1] Mr. Saul was recently confirmed as the Commissioner of Social Security and has been substituted for the previously acting commissioner, Nancy Berryhill.

-1-

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to

-2-

Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled. Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's residual functional capacity ("RFC"). Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC. 20 C.F.R. § 404.1520(a)(4). The claimant carries the burden of establishing the requirements of Steps One through Step Four, but at Step Five the burden shifts to the Commissioner. If the Commissioner fails to carry his burden at Step Five, the claimant is entitled to a finding of disability as a matter of law. *See Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of all medical sources, including treating and examining physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Under what is commonly referred to as the Treating Physician Rule, the Commissioner is required to give special consideration to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling

weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

The opinions of non-examining sources and state agency medical consultants must be weighed under the same standards of the Treating Physician Rule, including the source's "specialization". . . "support" from the "relevant evidence" and other relevant factors. § 404.1527(c)(2). The Commissioner further pledges that the opinions of non-examining sources will be evaluated on "the degree to which these opinions consider all the pertinent evidence . . ." *Id.* § 404.1527(c)(3).[2]

Although the final agency decision in a Social Security disability claim rests with the Commissioner, it is well settled that a disability decision by another governmental agency "cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2329939 at *6. The Commissioner recognizes that another governmental agency's disability decision and the evidence used to make that decision "may provide insight into the individual's mental and

---

[2] The Commissioner has given notice he intends to modify the Treating Physician Rule for all cases filed after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819 (January 28, 2017). Since this application for disability was filed on March 28, 2014, the Treating Physician Rule existing at that time is in full force and effect.

physical impairments and show the [claimant's] degree of disability . . ." under that agency's rules and regulations. *Id.* at 7. The Fourth Circuit has held that a Veterans Affairs ("VA") decision of disability is entitled to "substantial weight," which reflects "the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Bird v. Commissioner of Social Security*, 699 F.3d 337, 343, 344 (4th Cir. 2012). An Administrative Law Judge ("ALJ") may give less weight to a VA disability rating only "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

### Factual Background

Plaintiff, an American veteran of the Gulf War era, has been rated disabled under the Veterans Administration (VA) disability system effective October 15, 2013, based upon a combination of severe impairments, including chronic migraine headaches, major depressive disorder, bronchial asthma, and abnormalities of the lumbar spine. Tr. 188-89, 221-25, 803. Prior to the award of VA disability benefits, Plaintiff was examined and evaluated by Dr. William Brannon, a board certified neurologist, regarding her chronic migraine headachess. Dr. Brannon described Plaintiff's pain as "distracting, attention and concentration is dulled, attitude is acrimonious during headaches." Tr. 381. He went on to state that Plaintiff was having employment difficulties because of the frequency and severity of her headaches and that "under the present circumstances this veteran is indeed unemployable." Tr. 382.

Plaintiff's migraines became increasing frequent in late 2013, resulting in her missing work as much as one to two days per week. Tr. 384. An examining VA physician, Dr. Pamela Crawford, opined that "the veteran's major depressive disorder is more likely than not

proximately due to the veteran's service connected migraine headaches, traumatic arthritis of the lumbar spine." Tr. 385. Plaintiff's migraines were initially treated with Fioricet, a highly addictive barbiturate, and later with Botox injections. Tr. 357, 449, 464.

The addition of the Botox injections reduced the frequency and intensity of Plaintiff's migraines but the headaches nevertheless persisted. At the suggestions of her treating physicians, Plaintiff documented her migraines in a personal journal. Tr. 55. Initially, after her Botox injections began, the migraines were reduced from twenty five per month to two to three per month. However, in June 2014, Plaintiff reported that she was experiencing five migraines every two weeks. Tr. 483, 505. By December 2014, she was experiencing eight migraines a month and the Botox was not reducing the intensity of the headaches. Tr. 673. By early 2015, Plaintiff's VA record documented that the therapeutic benefits of the Botox injections were decreasing and she had seventeen episodes of migraines over the prior twelve weeks, with one cluster of headaches running for nearly two weeks. Tr. 862. In March 2015, Dr. Waheed, a treating neurologist, noted that Plaintiff was experiencing five to six migraines per month, but stated in a March 2016 office record that the intensity and frequency of the headaches had increased. Tr. 693. Dr. Eppig, a treating VA pain medicine specialist, also documented in a March 2016 note the increasing intensity and frequency of Plaintiff's migraines, then occurring fifteen times in the prior nine weeks. Tr. 703, 705, 713. By July 2016, the VA record notes that Plaintiff was typically experiencing two to three migraines per week. Tr. 736. In addition to the treatment for her migraines, Plaintiff was receiving ongoing therapy for her mental health issues, with treatment notes reflecting significant anxiety and depression.

Plaintiff testified before the ALJ at a hearing on September 27, 2016. She stated that she was then experiencing six to fourteen migraine headaches per month, with each typically lasting a day. With the onset of the migraine, Plaintiff testified she would take Fioricet and go to her bedroom to sit in the dark. Tr. 54-55. She also explained that the Botox was then largely ineffective and she relied primarily on Fioricet for relief, but she could only take this medicine on a limited basis because it was so addictive. Tr. 57. A vocational expert also testified at the administrative hearing, stating that if Plaintiff were absent two days a month that this would be "certainly excessive" and "inconsistent with gainful employment." Tr. 81.

The ALJ issued a decision on October 31, 2016, finding that Plaintiff suffered from numerous severe physical and mental impairments, including migraine headaches, degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the left knee and hip, asthma, and major depressive disorder. Tr. 24. Despite these multiple severe impairments, the ALJ found Plaintiff retained the residual functional capacity for light work. Tr. 29. In reaching this conclusion, the ALJ acknowledged the agency's duty to give substantial weight to the VA disability finding but contended that the record evidence "clearly demonstrates" that a deviation from the VA disability finding was appropriate. Tr. 34. The ALJ repeatedly noted that the frequency and intensity of Plaintiff's migraine headaches had decreased with the Botox injections, but never addressed the impact of the continued presence of migraine headaches and the decreasing effectiveness of the Botox injections over the several years documented in Plaintiff's VA record. Tr. 32, 33, 34. The ALJ's decision became the final order of the Commissioner, and Plaintiff timely filed an appeal of that decision to this Court.

## Discussion

1. <u>The ALJ erred in failing to give substantial weight to the Plaintiff's VA disability rating where the administrative record did not "clearly demonstrate" that a deviation from the VA disability rating was appropriate.</u>

The record before the Court establishes that while Plaintiff experienced some interim benefit from Botox injections, reducing to some degree the intensity and frequency of the migraine headaches, she continued to experience intense migraine headaches. Based on this well documented history, Plaintiff began receiving VA disability benefits effective October 15, 2013, which continued during the time period documented in the administrative record before the Court. This disability rating was frequently referenced in the records of Plaintiff's treating specialist physicians at the VA, and no treating physician ever questioned her disability status.

The ALJ gave little deference to the VA's disability findings and the opinions and findings of the VA treating and examining physicians. Dr. William Brannon, a board certified neurologist, made detailed findings in a report he prepared in December 2013, which the ALJ casually dismissed as deserving "only some evidentiary weight." The ALJ failed to evaluate Dr. Brannon's medical opinions under the standards of the Treating Physician Rule or provide any meaningful explanation for the limited weight given the opinions of this specialist physician. Tr. 35, 379-82. On the other hand, the ALJ gave the same weight ("some weight") to the opinions of the non-examining chart reviewing in-house physicians despite the fact that the ALJ concluded that these chart reviewers failed "to fully account for the claimant's limitations due to her migraine headaches, mental impairments, and musculoskeletal impairments" and

they reviewed none of the medical evidence after September 2014. Additionally, the ALJ failed to evaluate the opinions of these non-examining physicians, as required, under the standards of the Treating Physician Rule.[3]

Applying the standards of *Bird v. Commissioner of Social Sec. Admin.*, and giving "substantial weight" to the VA disability rating, this administrative record clearly supports Plaintiff's disability under the Social Security Act. Although Plaintiff realized benefit from the Botox injections, her migraine headaches persisted on a weekly or more frequent basis, with each headache sending Plaintiff to her to bed to sit in a dark room for a significant portion of the day. The ALJ treated Plaintiff's benefit from the Botox injections as a cure, which the medical record plainly establishes was not the case. The VA awarded Plaintiff full disability benefits and her treating VA physicians have documented the persistence of her severe and frequent migraine headaches since that time. The record before the Court does not "clearly demonstrate" a basis to reject the VA disability rating. The failure of the ALJ to follow the requirements of *Bird* requires the reversal of the decision of the agency. Since there is not evidence in the

---

[3] The ALJ mentioned twice that Plaintiff's treating pain specialist, Dr. Eppig, stated that the claimant's migraines were "controlled" by Botox injections and other medicines, suggesting that Plaintiff's migraine headaches were no longer actively symptomatic because of her medical treatment. Tr. 33, 34. This was clearly not the case, An examination of Dr. Eppig's record reveals that the ALJ took the physician's use of the term "controlled" completely out of context. In an office note of March 31, 2016, Dr. Eppig first referenced a note from Dr. Waheed, Plaintiff's treating neurologist, that the patient's headaches had "lately . . . increased in frequency." Tr. 713. Dr. Eppig then document that since January 29, 2016, the time of her last Botox injection, Plaintiff had experienced fifteen migraines over nine weeks, which lasted on average eight to ten hours. Some migraines, Dr. Eppig noted, lasted up to three days. Tr. 705. Dr. Eppig concluded her multi-page note with an assessment that included the statement "chronic migraine HA's controlled with Botox." Tr. 709. It is plain in this context "controlled" meant the equivalent of treated, not cured, by the Botox injections.

administrative record that "clearly demonstrates" that the Social Security Administration should deviate from the VA disability rating, Plaintiff is entitled to an award of Social Security disability benefits.

2.      <u>The Commissioner failed to carry his burden at Step Five in the Sequential Process of showing that there are jobs in sufficient numbers in the national economy that Plaintiff could perform</u>.

The Commissioner offered the testimony of a Vocational Expert to carry his burden of showing that there are sufficient jobs in the national economy Plaintiff could perform despite her demonstrated impairments. The Vocational Expert testified that if Plaintiff's condition resulted in her being absent two days a month or more she would not be employable. Tr. 81. The well documented record from the office notes of Plaintiff's treating neurologist and pain medicine specialist set forth a pattern of migraine headaches that conservatively ran in the range of one to two migraine headaches per week, and the uncontested evidence in the record indicated that each of these headaches, on average, impaired Plaintiff for the day. Tr. 54-55, 483, 505, 673, 693, 703, 705, 713, 862. Dr. Brannon, an examining board certified neurologist, opined that Plaintiff was unemployable because of her likely frequent absences due to her migraine headaches. Tr. 382.

Based on this record, there is not substantial evidence in the record that Plaintiff could perform work that would result in less than two absences per month. As such, the Commissioner has failed to carry his burden at Step Five, which entitles Plaintiff to a finding of disability as a matter of law. This provides a second and independent basis for the reversal of the agency decision and an award of benefits.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the

Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDS** this matter to

the agency with instructions to award benefits from January 28, 2014.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

July 15, 2019
Charleston, South Carolina